# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 70044-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOSE ALFREDO GABINO, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 20, 2015 |

TRICKEY, J. — The exercise of challenges for cause and peremptory challenges during jury selection at a sidebar conference does not violate the right to a public trial.

In April 2003, the State charged Jose Gabino with child molestation in the first degree. The victim, a minor at the time, was not Gabino's biological child. The trial resulted in a hung jury. Following a second trial in 2012, a jury convicted Gabino as charged. The trial court imposed a minimum term of 62 months confinement and a lifetime term of community custody.

Gabino appeals his conviction and several community custody conditions in the judgment and sentence. We affirm, but remand to the trial court for proceedings consistent with this opinion.

## PUBLIC TRIAL RIGHT

Gabino maintains that the trial court violated his constitutional right to a public trial by allowing for-cause and peremptory challenges to take place during a sidebar conference without first analyzing the requisite factors set forth in State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995). This contention fails.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to a public trial. State v.

Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). Certain proceedings must be held in open court unless the trial court first considers on the record the five-factor test set forth in Bone-Club, and finds the factors justify a closure of the courtroom. 128 Wn.2d at 258-59. The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue implicates the right. State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." Sublett, 176 Wn.2d at 71.

Here, during jury selection, the jury venire was questioned in an open courtroom and on the record. At the close of questioning, the trial court held a sidebar conference with counsel outside the presence of the jury panel and off the record. The trial court did not conduct a Bone-Club analysis before convening the sidebar conference. Following the sidebar conference, the trial court announced in open court which jurors had been selected to sit on the jury. After the jury left the courtroom, the trial court stated it wished "to put on the record what we did at side bar regarding jury selection."[1] The trial court made a clear indication of the discussion that took place during the sidebar conference, and announced which party challenged which juror and the results of those challenges. The court reporter notes indicated the same. Washington appellate courts have repeatedly rejected Gabino's argument and similar ones. State v. Filitaula, __ Wn. App. __, 339 P.3d 221 (2014); State v. Marks, __ Wn. App. __, 339 P.3d 196 (2014); State v. Webb, 183 Wn. App. 242, 333 P.3d 470 (2014); State v. Dunn, 180 Wn. App. 570, 321 P.3d 1283 (2014); State v. Love, 176 Wn. App. 911, 309 P.3d 1209 (2013), petition for

---

[1] 2 Report of Proceedings (October 10, 2012) (Supp.) at 3.

review granted in part, No. 89619-4 (Wash. Jan. 6, 2015). Following those decisions, we conclude that the trial court did not violate Gabino's public trial right.

COMMUNITY CUSTODY CONDITIONS

Gabino next challenges several of the crime-related conditions of sentence imposed upon him during the lifetime term of community custody.

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, a court has the authority to impose "crime-related prohibitions" and affirmative conditions as part of a felony sentence. RCW 9.94A.505(8). "'Crime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A court may order compliance "with any crime-related prohibitions" as a condition of community custody. RCW 9.94A.703(3)(f). "We review the imposition of community custody conditions for an abuse of discretion, and reverse only if the decision is manifestly unreasonable or based on untenable grounds." State v. Johnson, No. 44194-2-II, 2014 WL 6778299, at *1 (Wash. Ct. App. Dec. 2, 2014).

Condition 13 ordered Gabino to "[a]void all contact with minors, to including your own children, and adhere to the instructions of the Community Corrections Officer [(CCO)] concerning residence and employment, unless otherwise authorized by the Department of Corrections and treatment provider with an adult sponsor approved by the provider and the Department of Corrections."[2] Gabino asserts that the trial court violated his fundamental right to parent because it did not consider whether the condition was reasonably necessary to effectuate a compelling state interest.

_____

[2] Clerk's Papers (CP) at 112.

3

"More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). The right to the care, custody, and companionship of one's children constitutes such a fundamental constitutional right. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 299 P.3d 686 (2010). Thus, sentencing conditions burdening this right "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" Rainey, 168 Wn.2d at 374 (quoting Warren, 165 Wn.2d at 32).

In State v. Letourneau, the defendant was convicted of second degree rape of a child. 100 Wn. App. 424, 427, 997 P.2d 436 (2000). The victim was a minor to whom the defendant was not related. Letourneau, 100 Wn. App. at 428-29. As a condition of her sentence, Letourneau was prohibited from unsupervised contact with her biological children until they reached the age of majority. Letourneau, 100 Wn. App. at 437-38. Because there was no evidence that the defendant might molest her own children, we found that the condition was not reasonably necessary to accomplish the State's compelling interest. Letourneau, 100 Wn. App. at 441-42.

Similarly, in Rainey, the Supreme Court struck a lifetime no-contact order prohibiting the defendant from all contact with his child. 168 Wn.2d 367, 381-82, 299 P.3d 686 (2010). The court based its decision on the fact that the sentencing court did not articulate any reasonable necessity for the lifetime duration of that order. Rainey, 168 Wn.2d at 381-82. Recognizing the "fact-specific nature of the inquiry," the court remanded to the trial court for resentencing so that the court could "address the

parameters of the no-contact order under the 'reasonably necessary' standard." Rainey, 168 Wn.2d at 382.

As in Rainey, the trial court here provided no explanation as to whether the no-contact order was reasonably necessary to realize a compelling state interest. Although the State has a compelling interest in protecting children from harm, the State did not demonstrate how prohibiting all contact between Gabino and his children was reasonably necessary to protect that interest, especially in light of the fact that his children were not victims of Gabino's offenses. See Letourneau, 100 Wn. App. at 441-42. And the State presented no evidence to indicate that Gabino would molest his own children. Moreover, there is no temporal limit on the restriction on contact with minor children because Gabino was sentenced to lifetime community custody. If Gabino were to have children in the future, he would be prohibited from contacting them.

The State responds that the no-contact order was proper because Gabino's children are minors and therefore fall within the same class as that of the victim. In addition to crime-related prohibitions, a court may order an offender to have no contact with victims or a "specified class of individuals." RCW 9.94A.703(3)(b). The specified class must bear some relationship to the crime. State v. Riles, 135 Wn.2d 326, 350, 957 P.2d 655 (1998), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010). The State's cursory argument fails to demonstrate with specificity how Gabino's children fall within the same "specified class" as the victim. We are not persuaded by this argument.

The sentencing condition prohibiting contact with his biological children implicates Gabino's fundamental right to parent his children. Therefore, the State must make some

showing that the condition is reasonably necessary to accomplish the essential needs of the state and the public order. The State failed to do so. We therefore strike the portion of Condition 13 that prohibits Gabino from contacting his own children.

Condition 3 ordered Gabino to "[s]ubmit to polygraph and/or plethysmograph assessment at own expense as directed by Department of Corrections and therapist, but limited to topics related to monitoring compliance with crime-related sentencing conditions."[3] Gabino argues that this condition violates his right to be free from bodily intrusions insofar as it requires him to submit to plethysmograph testing at the direction of the Department of Corrections for purposes of monitoring compliance with sentencing conditions. He does not challenge the polygraph aspect of the condition.

RCW 9.94A.703(3)(c) allows a trial court to order an offender to "[p]articipate in crime-related treatment or counseling services." But requiring an offender to submit to plethysmograph testing incident to crime-related treatment is a proper community custody condition, so long as the testing is not used as a routine monitoring tool subject only to the discretion of a CCO. State v. Land, 172 Wn. App. 593, 605, 295 P.3d 782, review denied, 177 Wn.2d 1016, 304 P.3d 114 (2013); see also Johnson, 2014 WL 6778299, at *2 (holding that CCO may order plethsymograph testing, but scope of the CCO's authority is limited to ordering such testing only for purposes of sexual deviancy treatment). Accordingly, we affirm the trial court's imposition of condition 3 with directions to the trial court to clarify that a CCO may order plethsymographs only for the purpose of sexual deviancy treatment.

---

[3] CP at 111.

Condition 6 prohibited Gabino from "us[ing] or posess[ing] sexually explicit material in any form as described by the treatment provider and/or [CCO], including [I]nternet use and possession."[4] Relying on State v. Bahl, 164 Wn.2d 739, 193 P.3d 678 (2008), Gabino contends that this condition is unconstitutionally vague.

The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution require that citizens have fair warning of proscribed conduct. Bahl, 164 Wn.2d at 752. Community custody conditions that fail to provide ascertainable standards of guilt to protect against arbitrary enforcement are unconstitutionally vague. Bahl, 164 Wn.2d at 752-53; State v. Sansone, 127 Wn. App. 630, 638-39, 111 P.3d 1251 (2005). Because sentencing conditions are not laws enacted by the legislature, they are not afforded the same presumption of constitutionality as legislative enactments. State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010); Bahl, 164 Wn.2d at 753. Nevertheless, "'a community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" Sanchez Valencia, 169 Wn.2d at 793 (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009)). "If persons of ordinary intelligence can understand what the [condition] proscribes, notwithstanding some possible areas of disagreement, the [condition] is sufficiently definite." City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990).

In Bahl, our Supreme Court reviewed a similar condition of community custody, which stated the following: "Do not possess or access pornographic materials, as directed

---

[4] CP at 111.

by the supervising [CCO]. Do not frequent establishments whose primary business pertains to sexually explicit or erotic material." 164 Wn.2d at 743. The court first held that the prohibition on possessing pornographic materials was vague and that the discretion of the CCO only made the vagueness more apparent because it "acknowledges that on its face it does not provide ascertainable standards for enforcement." Bahl, 164 Wn.2d at 758. Second, the court held that the terms "sexually explicit" and "erotic" were not unconstitutionally vague when considering the context in which they are used, their dictionary definitions, and the statutory definition. Bahl, 164 Wn.2d at 759. We likewise find that the condition here was sufficiently definite to give notice to Gabino of the proscription against using or possessing explicit materials. Nor does the condition fail to provide ascertainable standards of guilt to protect against arbitrary enforcement.

Nevertheless, the trial court abused its discretion in imposing this condition. Restrictions implicating First Amendment rights must be reasonably necessary to accomplish essential state needs and public order. Bahl, 164 Wn.2d at 757-58. No evidence indicates that use of sexually explicit material was related to Gabino's conviction of first degree child molestation. And the State failed to establish that this prohibition was reasonably related to a compelling state interest and public order. Accordingly, we remand with instructions to strike condition 6.

Conditions 12 and 16 state, respectively: "Do not withhold information or keep secrets from treatment provider or [CCO]," and "[d]o not date or form relationships with people who are less than 20 percent of your age."[5] The State correctly concedes that

---

[5] CP at 112.

these conditions are vague and not crime-related. We accept the State's concessions and remand to strike conditions 12 and 16.

We affirm Gabino's conviction, but remand for the trial court to (1) strike the portion of condition 13 that prohibits Gabino's contact with his children, (2) clarify that condition 3 authorizes a CCO to order plethsymographs only for the purpose of sexual deviancy treatment, (3) strike condition 6, and (4) strike conditions 12 and 16.[6]

Trickey, J.

WE CONCUR:

_Schindler, J._  _Cox, J._

---

[6] In a statement of additional grounds, Gabino asserts that he received ineffective assistance of counsel and that he was unlawfully sentenced under the current version of the SRA, even though he committed the criminal act in 2003. We discern no error.